THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| WILLIAM M. LEBLANC, THOMAS A. BOHANNON, JAMES A. JORDAN, and PETER TENEREILLO, : : : : | |
| Plaintiffs, : : | Civil Action No. 3:03-cv-65 |
| v. : : | |
| NORTEL NETWORKS CORPORATION, : : | |
| Defendant. : : | |

## ORDER ON MOTIONS TO EXCLUDE EXPERT TESTIMONY

Both parties have filed motions to exclude testimony of expert witnesses from the trial of this case. Defendant has moved to exclude the testimony of Plaintiffs' experts Donald Raulerson and Patrick Kelley. Plaintiffs have moved to exclude portions of the testimony of Charles Phillips. For the reasons set forth below, Defendant's motion to exclude (Doc. 41) is **GRANTED**, in part, and **DENIED**, in part, and Plaintiffs' motion in limine (Doc. 37) is **GRANTED**.

**1.     Donald Raulerson**

Plaintiffs have named Donald Raulerson, a certified public accountant, as their expert on damages. Mr. Raulerson has given his opinion concerning the damages suffered by each Plaintiff as a result of the alleged breach of contract in this case. Given the Court's findings on Defendant's motion for summary judgment, much of Mr. Raulerson's opinion is essentially irrelevant and will not be helpful to the jury. The motion to exclude Mr. Raulerson's testimony is therefore **GRANTED**.

1

In ruling on the motion for summary judgment, the Court found that there were genuine issues of material fact as to whether Defendant had complied with its obligation to initiate procedures for the exchange of share certificates "as promptly as practicable." The Court found that the same exchange procedures applied for the two types of shares held by the Plaintiffs, which the parties and the Court have referred to as the "owned shares" and the "vested shares."[1] The Court rejected Plaintiffs' argument that the vested shares were not subject to the exchange procedures and were subject to immediate delivery upon close of the merger on October 6, 2000.

Mr. Raulerson's report sets forth specific damages calculations for each Plaintiff, based upon the assumption that each Plaintiff should have received his stock certificates on October 6, 2000, the day after the merger.[2] He calculated damages by subtracting the volume-weighted average price ("VWAP") on the date Plaintiffs should have received their certificates from the VWAP on the dates Plaintiffs actually received their certificates. As Defendant points out, his October 6 starting date is unsupportable. Under no interpretation of the merger agreement would the Plaintiffs have been entitled to receive their share certificates the day after the close of the merger. The agreement provided only that the exchange process would begin with the mailing of transmittal material to stockholders as promptly as practicable after the close. Stockholders would then have to return the transmittal materials with their old certificates to Defendant's exchange agent, who would then deliver new certificates. Even under a far more stringent contract term, such as "as promptly as possible," the process would have taken a minimum of three days to complete. The more flexible

---

[1] Confusingly, but perhaps more accurately, Mr. Raulerson refers to the "owned shares" as "vested shares" and to the "vested shares" as "monthly shares" or "accelerated shares."

[2] Mr. Raulerson also takes into account a small number of "monthly shares" that vested on October 14 and October 19, 2000, and assumes that Plaintiffs should have had these shares by October 16 and October 20.

term actually used in the contract contemplates a longer period of time, and it will be for the jury to decide exactly how much time was reasonable.

It is unlikely that expert testimony will be necessary to determine damages in this case. The Court has already ruled as a matter of law that the measure of damages is the difference between the price on the date that each plaintiff would have sold his stock and the price on the date that he actually received his stock. The jury must determine the date on which the Plaintiffs would have sold their stock, which in this case will coincide with the date on which the Plaintiffs should have received their certificates, under the contract. The Court proposes to submit special interrogatories to the jury. The jury will first be asked to determine whether the exchange of shares took place as promptly as practicable. If the jury answers that interrogatory in the negative, the jury will be asked to determine the latest date on which the exchange could have been completed to remain consistent the requirements of the contract. Finally, the jury will be asked whether each Plaintiff did in fact intend to liquidate his shares immediately upon receipt. If the jury answers this third question in the affirmative, calculation of the damages should be a simple matter of subtracting the VWAP on the date Plainitffs actually received their certificates from the VWAP on the date Plaintiffs would have sold them, had they received them in a timely manner. As the stock prices will be a matter of public record, it seems reasonable to expect that the parties could stipulate to the relevant prices and to the difference between them. To the extent that there remains some dispute as to the volume weighted average prices, however, the Court may reconsider its decision to exclude the testimony of Mr. Raulerson.

**2.      Patrick Kelley**

The testimony of Plaintiffs' expert, Patrick Kelley, is likely to assist the jury in understanding a provision of the federal tax code that is relevant to Plaintiffs' intent to sell their stock, and the Court finds no reason to exclude his testimony. Mr. Kelley is a certified public accountant with expertise in taxation. Plaintiffs propose to call him to explain the effect of Section 280G of the Internal Revenue Code on the transaction in question. Section 280G of the tax code is a provision related to taxation of "excess parachute payments" (also known as "golden parachutes") to officers, substantial shareholders, and highly compensated employees during a merger of companies. The essence of Mr. Kelley's opinion is that Section 280G applies to the accelerated vesting of the restricted stock provided in the merger agreement, and that this provision has adverse tax consequences both on the corporation and the employee receiving the payment.

Mr. Kelley's opinion is relevant to a disputed issue in the case. Although the Court's summary judgment Order finds that there is no evidence to support Plaintiffs' claim that Defendant withheld the stock certificates from Plaintiffs in order to force them to sign 280G waivers, the tax provision remains relevant as possible corroboration of Plaintiffs' testimony that they intended to sell their stock immediately. Plaintiffs argue that their decision not to execute the 280G waiver illustrates that they were willing to accept a significant additional tax liability so that they could have their accelerated vested shares more quickly.

Mr. Kelley's testimony meets the requirements of Rule 702 of the Federal Rules of Evidence, in that it will assist the jury to understand the evidence and determine a fact in issue. The workings of the Internal Revenue Code, particularly in matters of corporate mergers, are complex and outside the knowledge or understanding of a typical juror. As Defendant argues, Mr. Kelley's opinion is

not much more than a summary of the provisions of Section 280G relevant to the transactions at issue in this case.  Nevertheless, it would be helpful to the jurors to have an expert explain to them simply and concisely the application of the provisions to this transaction.  As a certified public accountant with a master's degree in taxation and thirty-three years of experience, Mr. Kelley has sufficient expertise to explain provisions of the tax code.  His conclusions are neither complex nor controversial.  Without his testimony, the Court might be required to give a lengthy jury charge concerning a matter that is only peripherally related to the issues in the case.  It makes more sense to allow Mr. Kelley to testify.  Accordingly, the motion to exclude his testimony is **DENIED**.

**3.      Charles Phillips**

Plaintiffs have moved to exclude the testimony of Charles Phillips, as to certain opinions and certain subjects.  Defendant offers Mr. Phillips as its expert on damages and to evaluate the opinions of Plaintiffs' expert, Mr. Raulerson. Specifically, Plaintiffs move to exclude testimony as to Mr. Phillips' opinions that Plaintiffs received their stock certificates within a reasonable time, that Plaintiffs' expert, Mr. Raulerson, erred in calculating damages based on the date Plaintiffs should have received their stock rather than on the date they would have sold their stock, and that Plaintiffs would not have sold their stock.  The motion is **GRANTED**, and Mr. Phillips will not be permitted to express an opinion in these three areas.

Mr. Phillips' testimony is irrelevant largely for the same reasons that Mr. Raulerson's testimony is irrelevant.  As to the first opinion, Mr. Phillips challenges Mr.Raulerson's calculations for using October 6 as the starting date for calculating damages.  As noted above, the Court has held as a matter of law that October 6 cannot be the starting date for calculating damages.   Mr. Phillips does not express his own opinion as to the reasonable date for completion of the certificate

exchange, but relies upon the opinion of another expert, David Stockton.  Plaintiffs have not challenged the admissibility of Mr. Stockton's testimony.   There is no need for Mr. Phillips to testify on the issue.

As to the second opinion, Mr. Phillips contends the Mr. Raulerson erred by basing his calculation of damages on the dates Plaintiffs should have received their certificates, rather than the date they would have sold their stock.  Again, the Court has already made determinations on these issues as a matter of law.  The date on which Plaintiffs would have sold their stock is the relevant date for calculation of damages.  The only evidence in the case that Plaintiffs intended to sell their stock is in their affidavits, in which they testify that they intended to sell the stock on the date they received their certificates, provided that date was before October 25, 2000.  When Plaintiffs should have received their stock and whether they would have sold at that time are matters in dispute to be determined by the jury, and calculation of damages will be determined based on the jury's findings.  In addition, the jury will be asked to determine whether the Plaintiffs would have sold their stock on the date they received it.

Mr. Phillips' opinion regarding Plaintiffs' intent to sell their stock will not be helpful to the jury.  In his report Mr. Phillips expresses his opinion that the Plaintiffs would not have sold their stock upon receipt.  His opinion is based on the fact that when Plaintiffs actually did receive their certificates, they did not sell immediately, but rather waited several months to sell.  To support this opinion, he refers to the testimony of two Plaintiffs that they decided to hold their shares based on tax concerns and the advice of their brokers.  In other words, he simply recites from the record reasons that made it advantageous for Plaintiffs to hold their stock.  In their affidavits Plaintiffs acknowledge these advantages, but also explain certain reasons that they had for wanting to liquidate

6

their stock immediately. It will be the jury's duty to evaluate the credibility of this testimony in light of the fact that Plaintiffs did not choose to sell when they received their stock, and in spite of the negative tax consequences of an early sale. A certified public accountant has no more expertise at evaluating credibility than a juror. Because his testimony as to Plaintiffs' intent serves no purpose under Rule 702, it is excluded.

      SO ORDERED, this the 30th day of March, 2006.

                                          S/ C. Ashley Royal
                                          C. ASHLEY ROYAL
                                          UNITED STATES DISTRICT JUDGE

chw