THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| WILLIAM M. LEBLANC, THOMAS A. BOHANNON, JAMES A. JORDAN, and PETER TENEREILLO, : : : : Plaintiffs, : : v. : : NORTEL NETWORKS CORPORATION, : : Defendant. : : | Civil Action No. 3:03-cv-65 |

## ORDER ON DAMAGES

On August 9, 2006, a jury returned a verdict in this case, finding that Defendant Nortel had breached a contractual obligation to Plaintiffs in failing to make a timely exchange of share certificates for Plaintiffs' "vested" shares of Alteon stock that had converted to Nortel stock as a result of the merger. Pursuant to the Court's Summary Judgment Order of March 30, 2006, the Court must now calculate damages based upon the jury's findings and the stipulations of the parties.

**I.      Initial Considerations**

   **A.      Use of Volume Weighted Average Price**

The measure of damages in this case is the difference in value of the stock on the date it should have been delivered and the value of the stock on the date it was delivered. The jury found that the exchange should have been completed and the share certificates delivered no later than October 20, 2000. The jury also found that Plaintiffs would have sold their stock immediately, had they received it on time. The parties have stipulated that Plaintiffs LeBlanc, Bohannon, and

1

Tenereillo actually received their stock on December 4, 2000, while Jordan received his on December 5, 2000.

To determine the relative values of Nortel stock on the dates in question, the Court uses the Volume Weighted Average Price ("VWAP"), found in the stipulations of the parties. It must be acknowledged that this price term is a compromise, given that the price of a stock fluctuates during the course of trading day, and given that it is impossible to determine at what precise moment any given Plaintiff would have effected his trade. Nortel would prefer that the Court use instead the low price for the day, for the obvious reason that the use of the low price produces a lower result.[1] No doubt Plaintiffs would prefer that the Court use the daily high, though they have not requested it. The VWAP represents a reasonable compromise between the two positions and an objective means of determining the value for a given day without favor to either side. In cases involving the valuation of commodities having a fluctuating value, a degree of "rough justice" is required. See, e.g., Madison Fund, Inc. v. Charter Co., 427 F.Supp. 597, 609 (S.D.N.Y. 1977).

### B.   Prejudgment Interest

In addition to the difference in value between the date of obligation and the date of receipt, Plaintiffs are entitled to prejudgment interest as an element of damages under New York law. At trial the Court denied Nortel's motion to strike Plaintiffs' claim for prejudgment interest. Nortel contended that Georgia law, specifically O.C.G.A. § 13-6-13, would apply to Plaintiffs' claims for prejudgment interest. That section gives the jury discretion to grant prejudgment interest on an

---

[1] Ordinarily, the use of the VWAP should not produce a significantly different figure from the use of either the high or the low for the day, given that it is used for the value on both the date of obligation and the date of delivery. In this case it happens that the daily low for Nortel stock on October 20, 2000, was below the VWAP by an unusual margin, whereas the difference between the VWAP and the low on December 4, 2000, is smaller.

unliquidated claim such as the claim in this case. Plaintiffs contended in response that New York law applied to damages pursuant to the choice of law clause in the Agreement and Plan of Merger.

The cases on which both parties rely for their choice of law arguments are difficult to interpret. Nortel relies on CRS Sirrine, Inc. v. Dravo Corp., 445 S.E.2d 782 (Ga.Ct.App. 1994), whereas Plaintiffs rely on Manderson & Assoc., Inc., v. Gore, 389 S.E.2d 251 (Ga.Ct.App. 1989). In CRS Sirrine, the court applied a choice of law provision that required the agreement to be interpreted according to the laws of Virginia. Applying Virginia law, the court found that there was no provision in the contract requiring the payment of prejudgment interest. The court then determined that the matter of prejudgment interest was in the discretion of the trier of fact pursuant to O.C.G.A. § 13-6-13. There is no specific discussion of the application of Georgia choice of law principles to the matter of prejudgment interest, and no explicit holding that Georgia law must be applied to all questions of prejudgment interest.

Likewise, there is no specific discussion in Manderson. In Manderson, the court construed the contract in question under Alabama law, pursuant to the principle of *lex loci contractus* and a choice of law clause in the contract. The court relied on Alabama law in addressing the question of prejudgment interest, without giving its reasons for doing so. Neither Manderson nor CRS Sirrine offers the Court much guidance in determining whether to apply Georgia law or New York law to the question of prejudgment interest, and the Court has been unable to locate any more conclusive authority on the subject.

In this case, however, it is not necessary to undertake a deep exploration of the principles of choice of law, because the parties have both conceded from the beginning that New York law controls the question of damages. Indeed, it was Nortel that introduced the measure of damages

3

from Kaufman v. Diversified Indus., Inc., 460 F.2d 1331 (2nd Cir. 1972), the case on which the Court relied in its summary judgment order as setting the standard for damages. Under New York law, in contrast to Georgia law, prejudgment interest is automatically an aspect of damages for breach of contract. N.Y. C.P.L.R. § 5001(a). Because New York law controls the issue of damages, prejudgment interest is an element of damages.

### C.     Shares That Vested on October 15, 2000

The calculation of damages does not include LeBlanc's, Bohannon's, and Jordan's shares that vested on October 15, 2000. It is limited to the shares that vested on August 15, 2000, and September 15, 2000, and to the shares that vested by acceleration on the date of closing of the merger. The separate matter of the October 15 shares was not presented to the jury by way of evidence or argument. The verdict was time-specific. The jury determined that the exchange of certificates should have been completed by October 20, 2000, fifteen days after the close of the merger. This date is only five days after the vesting of additional shares on October 15. With regard to Plaintiff Tenereillo, evidence was presented to the jury with regard to shares that vested at the time of the merger and shares that vested on October 18, 2000, and the jury's verdict distinguished between the two types of shares, finding that Nortel had no obligation to complete the exchange of certificates for the October 18 shares prior to October 24, 2000. No such evidence was presented to the jury regarding the October 15 shares of Plaintiffs LeBlanc, Bohannon, and Jordan.

## II.    Calculation of Damages

### A.     William M. LeBlanc

The parties agree that Plaintiff LeBlanc possessed 54,270 Nortel shares that were vested as of the date of closing of the merger. The VWAP of Nortel on October 20, 2000, was $68.21. The

VWAP of Nortel on December 4, 2000, was $36.96. The difference between the two prices is $31.25. When that difference is multiplied by the number of Mr. LeBlanc's shares, the result is $1,695,937.50. For the 45 days between October 20, 2000, and December 4, 2000, at the prejudgment interest rate of 9%, Mr. LeBlanc would have earned interest in the amount of $41,074.20 ($912.76 per day times 45 days) on the amount realized from his shares. The prejudgment interest for the period between December 4, 2000, and August 17, 2000, calculated on the difference between the October 20 price and the December 4 price, at the rate of $418.18 per day, amounts to $870,650.76.

| | |
|---|---:|
| Damages | $1,695,937.50 |
| Interest (10/20-12/4/2000) | $41,074.20 |
| Interest (12/4/2000-8/18/2006) | $870,650.76 |
| Total | $2,607,662.46 |

**B.    Thomas A. Bohannon**

The calculations for Plaintiff Bohannon are the same as the calculations for Plaintiff LeBlanc.

| | |
|---|---:|
| Damages | $1,695,937.50 |
| Interest (10/20-12/4/2000) | $41,074.20 |
| Interest (12/4/2000-8/18/2006) | $870,650.76 |
| Total | $2,607,662.46 |

**C.    James A. Jordan**

The parties agree that Plaintiff Jordan possessed 54,270 Nortel shares that were vested as of the date of closing of the merger. The VWAP of Nortel on October 20, 2000, was $68.21. The

VWAP of Nortel on December 5, 2000, was $38.74. The difference between the two prices is $29.47. When that difference is multiplied by the number of Mr. Jordan's shares, the result is $1,599,336.90. For the 46 days between October 20, 2000, and December 5, 2000, at the prejudgment interest rate of 9%, Mr. Jordan would have earned interest in the amount of $41,986.08 ($912.76 per day times 46 days) on the amount realized from his shares. The prejudgment interest for the period between December 5, 2000, and August 17, 2000, calculated on the difference between the October 20 price and the December 5 price, at the rate of $394.36 per day, amounts to $820,663.16.

| | |
|---|---:|
| Damages | $1,599,336.90 |
| Interest (10/20-12/5/2000) | $41,986.08 |
| Interest (12/5/2000-8/18/2006) | $820,663.16 |
| Total | $2,461,986.14 |

### D.    Peter A. Tenereillo

The parties agree that Plaintiff Tenereillo possessed 31,691 Nortel shares that were vested as of the date of closing of the merger. The VWAP of Nortel on October 20, 2000, was $68.21. The VWAP of Nortel on December 4, 2000, was $38.74. The difference between the two prices is $31.25. When that difference is multiplied by the number of Mr. Tenereillo's shares, the result is $990,343.75. For the 45 days between October 20, 2000, and December 4, 2000, at the prejudgment interest rate of 9%, Mr. Tenereillo would have earned interest in the amount of $23,985.45 ($533.01 per day times 45 days) on the amount realized from his shares. The prejudgment interest for the period between December 4, 2000, and August 17, 2000, calculated on the difference between the October 20 price and the December 5 price, at the rate of $244.19 per day amounts to $508,403.58.

|  |  |
|---|---|
| Damages | $990,343.75 |
| Interest (10/20-12/4/2000) | $23,985.45 |
| Interest (12/4/2000-8/18/2006) | $508,403.58 |
| Total Damages | $1,522,732.78 |

## III. Conclusion

The Clerk of Court is hereby directed to enter judgment in favor of Plaintiffs in the amounts above, with postjudgment interest to accrue at the Court's standard rate.

SO ORDERED, this the 18th day of August, 2006.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT